3138.  GRANITE CITY CRUSH STONE CO. *v.* SOUTHERN MARBLE & GRANITE CO.

The correspondence between the parties and what was done thereunder having made a prima facie case of liability in the plaintiff's favor, and the defendant not having proved any fact sufficient to discharge this liability, the verdict for the defendant is contrary to law.

DECIDED JUNE 7, 1911.

Complaint; from city court of Statesboro—Judge Brannen. December 31, 1910.

*Johnston & Cone, L. B. Norton,* for plaintiff.

*H. B. Strange,* for defendant.

POWELL, J. The Granite City Crush Stone Company brought suit against the Southern Marble & Granite Company on account of the price of 36 stone window sills, of the value of $3 each. There is but little dispute as to the facts, and the case involves the construction of a course of correspondence and of certain acts which took place in connection therewith. On July 9, 1909, the plaintiff received from the defendant the following letter: "Please ship to S. A. Rogers 36 window sills of the following dimensions and finish: 3—6 long, 5x8"—4 cut top and face quoted by you to us at $3 apiece. Bill these to him at $3.25 each, and you can remit us $3 as soon as he pays you. Mr. Rogers, we are pretty sure, is all right. He is a contractor here, and does quite a large business; but if you do not care to ship them to him open, you can ship with B/L attached. We do not care to assume the responsibility for the payment of this bill for the amount we are to receive as a compensation. If you decide to ship with the B/L attached, notify Mr. Rogers. However, you can proceed with the order, as they

want the sills as soon as they can get them." To this the plaintiff replied: "Your favor of 7—9—09 received this morning, ordering 36 window sills of the following dimensions and finish: 3—6 long 5"x8"—4 cut top and face, the same to be shipped to Mr. Rogers at $3.25 each, 25 cents each to go to you, we understand. We will begin work on them at once, and when finished will ship to Mr. Rogers with B/L attached. As you are on the ground and know Mr. Rogers, and don't care to assume the responsibility, we had rather not take the risk. Do you desire us to write Mr. Rogers and state to him that we are cutting the sills for him and will ship B/L attached? We thank you very much for this order, and will appreciate any work you place with us, assuring you that we are ready and willing to allow you a certain per cent. on all work placed through you with us." The plaintiff shipped the sills to itself as consignee, "order notify" S. A. Rogers, and attached the bill of lading to a sight draft, and sent it to a bank in the defendant's city for collection. It turned out that Rogers had ordered only 12 sills, and on the 29th of July the defendant wrote to the plaintiff, telling of the mistake that had been made in transmitting the order, and asking that the plaintiff would wire the agent of the railroad company to let Rogers pay for 12 of the sills, and stating that the defendant would dispose of the balance for the plaintiff. What action was taken upon this letter does not appear. On the 27th of August the defendant wrote to the plaintiff as follows: "In regards to the sills here for Rogers, will state this to you: Rogers wants to pay for one dozen of these, including freight and demurrage. We can possibly dispose of the others here for you soon. We will do this without any compensation from you, and will see that Rogers takes up the draft for one dozen and pays freight and demurrage at once, if this suits you. As we wrote you in the beginning that we would not assume any obligations in the matter, we do not feel like advancing this additional amount. If this will suit you, notify the bank here to let him pay for one dozen at the price sold, and you need not remit us anything, and we will dispose of the others for you at the same price, charging you no commission at all." The plaintiff replied: "Answering your favor of the 27th inst., beg to state that in the first place you have not treated us right in this matter. At this time, though, we have not got the time to spare in forcing payment in full for the stone shipped ac-

cording to your order. We note that you are willing to pay at this time for 12 of the sills, and pay all freight and demurrage on the full amount, and would soon dispose of the balance and remit for them free of any charges to us. We are, under the circumstances, willing to accede to this proposition, with the full understanding that we are looking to you for the payment of all this stone, and do not know Rogers in the transaction, only as the man you directed us to ship the stone to. This will be your authority to the bank to allow payment for 12 sills, $39, and you pay all freight and demurrage charges on all the stone, and you to take the other sills and dispose of them soon and remit." It appears that Rogers acted upon the direction of the defendant company, and took and used 12 of the sills, and that he got them without the consent of the carrier; that the bill of lading was never taken up from the bank and surrendered to the carrier; that the carrier's charges were unpaid, and the remaining 24 sills of stone were sold for charges and bought in by Rogers. At some time during these transactions (the exact date is not disclosed by the evidence) the plaintiff's representative called upon the defendant's manager and asked for a settlement. The defendant's manager gave to the plaintiff's representative Rogers' check for $39, which paid for 12 of the stone sills which Rogers had used, and said that he had been trying to dispose of the remainder, and had failed to do so, but would go to Savannah in a few days and dispose of the remainder and remit.

On this state of affairs the court charged the jury that under the letter first quoted above (the initial letter of the correspondence), the defendant assumed no liability; and in this we think that the court was correct, at least so far as reference to direct and primary liability was concerned. In regard to the letter written by the defendant to the plaintiff on August 27, and the plaintiff's reply thereto, the court gave in charge to the jury the sections of the code which provide that mutuality of assent is an essential of a contract, and that where a proposal is made by a letter and the proposal contains alternative propositions, the receiver of the letter may elect as to which he will accept. After quoting these sections the court instructed the jury as follows: "Now, it is for you to say in this case what election was made by defendant in this case as to this letter here of August 8 from the Granite City Crush Stone Company. If they elected in this case to pay for those 12 and

turn them over to Mr. Rogers and pay the freight and demurrage on them, and they elected also to pay the freight and demurrage on all of it and dispose of the others, why, they would be bound by that contract. It is for you to say whether or not they undertook to turn over these 12 and hold the other there liable, and pay the freight and demurrage on the other; and you find from the evidence whether or not they did that." We understand this instruction (to which one of the exceptions 'in the record relates) as meaning that the plaintiff's letter in reply to the defendant's communication of August 27 contained an alternative proposal, and that under it the defendant had the right to either pay for 12 of the sills, together with the demurrage and freight on them, without being further bound, or to take the entire shipment, becoming bound accordingly. The court then also instructed the jury that before the defendant would be bound upon the contract, further than for the price of the 12 sills, which had already been paid for, it would have to appear that the plaintiff turned over the bill of lading to the defendant, since the title to the property had been reserved through the bill of lading with the draft attached. The jury thereupon found for the defendant, as it was not disclosed from the evidence what had become of the bill of lading.

We think that the court was in error in construing the plaintiff's letter in answer to the defendant's communication of August 27 as containing an alternative proposal. In our opinion it contained but one proposal, single and entire in its nature. Under that letter, when the defendant took 12 of the sills and delivered them to Rogers, it became bound to take all of the stone and to pay for it. It could not take a part and refuse to take a part. It is true that the bill of lading was retained by the bank as agent for the plaintiff; but the letter itself contained authority to the bank to turn over the bill of lading upon payment for 12 of the sills, and as the evidence does not show what became of the bill of lading, and as there is no plea that the plaintiff or the bank, as its agent, refused to turn over the bill of lading, it is to be presumed that the defendant merely neglected to take it up and to present it to the railroad company, and thereby allowed such of the sills as it did not move to be sold for the freight. It is apparent that many of the facts relating to the transaction are undisclosed. The defendant's manager, who handled the transaction at his end of the

line, was not produced as a witness, and it is not shown exactly in what manner he got possession of the 12 sills which he did deliver; but it is sufficiently plain that he acted under the letter to the extent of taking charge of at least 12 of the sills, and thereby rendered his company at least primarily bound upon the contract, and as no act on the plaintiff's part sufficient to discharge this prima facie liability is shown or pleaded, the verdict in the defendant's favor was unauthorized.

*Judgment reversed.*